KNOLL, Judge.
This appeal concerns the termination of the parental rights of the mother — appellant, Mary Russo. On appeal, she alleges the juvenile court erred in terminating her parental rights.
PACTS
On February 19, 1985, the State requested and received an instanter order of custody for C.L.R.,[1] date of birth, October 24, 1984, based on information that the child was in substantial immediate danger of injury. The information consisted of a complaint by a relative who stated that Mary Russo left the child with her with the excuse that she could no longer care for the child because of her own mental condition and because of the physical condition of the family home. The family home had no utilities due to a recent fire and Mary Russo’s husband was terminally ill. Also, C.L.R. who was four months of age at the time of his removal, was extremely dirty and wearing only a diaper during the cold weather.
*705 At a formal hearing conducted on February 22, 1985, the juvenile court determined that the child was in need of care and granted temporary custody of the child to the Department of Health & Human Resources (DHHR). The child has remained in the temporary custody of DHHR since the initial adjudication as a child in need of care and C.L.R.’s father has since died.
On February 23, 1989, the State instituted proceedings to terminate the parental rights of Mary Russo, pursuant to LSA-R.S. 13:1601(B). In support of its action, the State points to Mary Russo’s inability to care for her child, her refusal to attend parenting classes, her failure to obtain suitable housing since the initial adjudication of the child four years earlier, her lack of bonding with C.L.R. and her condition of mild mental retardation. On April 24, 1989, the juvenile court terminated Mary Russo’s parental rights.
TERMINATION OF PARENTAL RIGHTS
In the case sub judice, the State proceeded under LSA-R.S. 13:1601(B) to terminate Mary Russo’s parental rights, which requires:
“(1) One year has passed since the rendition of an abuse or neglect judgment or child in need of care judgment, as defined in R.S. 13:1600(7), pursuant to the Code of Juvenile Procedure, and in the opinion of the court the parent is unfit to rear the child.
(2) The parent or parents have shown no significant substantial indication of reformation and are unlikely to reform.”
Unfitness is defined in LSA-R.S. 13:1600(6) as:
“(6) ‘Unfit’ refers to a parent:
(a) Who has abused a child by inflicting physical or mental injury which causes severe deterioration to the child, or who has sexually abused, exploited, or overworked a child to such an extent that his or her health, moral, or emotional well-being is endangered; or
(b) Who has consistently refused to provide reasonably necessary food, clothing, appropriate shelter, or treatment either by medical care or other health services in accordance with the tenets of a well recognized religious method of healing with a reasonable proven record of success. Financial inability alone shall not constitute grounds for termination of parental rights; or
(c)Whose medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, or chemical dependency makes the parent unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior.”
These elements must be proven by clear and convincing evidence, LSA-R.S. 13:1603(A), and it must be proven that the best interests of the child require termination of the parental rights. LSA-R.S. 13:1602(D).
In the case sub judice, C.L.R. was adjudicated as a child in need of care on February 22, 1985, and has remained in the temporary custody of DHHR since the initial adjudication pursuant to successive child in need of care judgments.
The record shows that more than one year has elapsed between the initial adjudication as a child in need of care on February 22, 1985, and the filing of the petition on February 23, 1989, to terminate Mary Russo’s parental rights. Therefore, this portion of the statute is satisfied.
The statute also requires the juvenile court to conclude that the parent is unfit to rear the child.
In the case sub judice, the State offered evidence of the mother’s unfitness as a parent under subsections (b) and (c). After performing a psychological evaluation on October 7, 1986, Dr. Lyle LeCorgne, a clinical psychologist, concluded that Mary Russo is mildly mentally retarded and is lacking in social skills, and that any plans of having her child returned to her should be done carefully, gradually and under close agency supervision and monitoring. On May 23, 1988, Dr. Henry LaGarde, an *706 other clinical psychologist, conducted another psychological evaluation and opined that Mary Russo would be a difficult person with whom to work on improving her parenting skills and that it is highly unlikely that she would be able to care for the child on her own. In his psychological evaluation report, Dr. LaGarde summarized that Mary Russo is a “woman with a history of mild mental retardation who has oppositional tendencies, who tends to be defensive and suspicious, and who lacks the intellectual and emotional resources to follow through on her commitments.... ”
Also, Alfred Zeringue, Jr., a social service supervisor of the St. Martin Parish Office of Community Services, testified that the child was removed because of Mary Russo’s, admitted inability to care for the child, the obvious neglect of the child and the unsuitable condition of the family home. He described the house as in very poor physical condition due to fire damage to one-half of the house with the only source of heat being an open butane burner in the middle of a room on the floor. In addition, all of the utilities were disconnected and the floor was littered with animal feces. Moreover, he explained that approximately one year earlier, Mary Russo’s other six children were removed because of similar living conditions and also because the children stated that there were large rodents in the house that they played with and considered as pets.
In defense, Mary Russo testified that she loves her child and has never mistreated or physically abused her child. She stated that she had attempted to find ways to repair the fire-damaged house, but could not on her monthly check of $360.
The record supports the juvenile court’s findings that Mary Russo is unfit to rear her child. Based on her condition of mild mental retardation and her history of refusing to provide reasonably necessary food, clothing and shelter, we cannot say that the juvenile court abused its discretion.
In a parental termination action, the State must also demonstrate that the parent has shown no significant substantial indication of reformation and is unlikely to reform.
In the case sub judice, Zeringue explained that after the removal of the child, Mary Russo attended a meeting with social service workers to formulate a plan of action to resolve her problems and ultimately reunite her with the child. They agreed upon a three-pronged approach wherein Mary Russo would attend mental health sessions, parenting skills classes and would obtain suitable housing. However, after four meetings at a local mental health center, Mary Russo refused to attend any more sessions. In addition, after arrangements were made for her to attend parenting skills classes, she changed her mind and refused to attend. Lastly, the fire-damaged home has not been repaired nor has Mary Russo obtained permanent suitable housing.
Loulla Savoy, a family service worker, testified that Mary Russo has not attained any of the aforementioned goals and has not exhibited any signs of progress. She stated that all of the services available to Mary Russo have been utilized to no avail. In her opinion, it is unlikely that Mary Russo would reform and the best course of action for the child is adoption.
Considering the testimony and evidence adduced at trial, we cannot say that the juvenile court abused its discretion in concluding that Mary Russo has shown no significant substantial indication of reformation and is unlikely to reform.
Finally, the State must show that the best interests of the child dictate termination of the parental rights.
Elizabeth Belair, a foster care worker, testified that it would be in the best interests of the child if Mary Russo’s parental rights were terminated because C.L.R. has been in foster care since four months of age and further there has been no bonding between C.L.R. and Mary Russo.
James Deshotel, a social services supervisor with the St. Martin Parish Office of Community Services, testified that although the child’s visits with Mary Russo *707 have improved in the month before trial, he still recommended termination of Mary Russo’s parental rights because the child had bonded to the foster mother and Mary Russo had not attained any of her goals set after the child’s removal. Specifically, he emphasized Mary Russo’s failure to attend mental health sessions and her failure to obtain suitable housing.
Lastly, the record shows that George McHugh, the attorney for the child, stipulated that the best interests of the child require the termination of Mary Russo’s parental rights.
Based upon the evidence of record, we cannot say that the juvenile court clearly erred in determining that it would be in the best interests of the child to terminate the parental rights of Mary Russo.
Accordingly, we find that the juvenile court did not abuse its discretion in terminating the parental rights of Mary Russo.
For the foregoing reasons, the judgment of the juvenile court is affirmed. Costs of this appeal are assessed to appellant, Mary Russo.
AFFIRMED.

. The'minor child is referred to by the initials, C.L.R. in this opinion.